STATE OF LOUISIANA

VERSUS

NOE A. AGULIAR-BENITEZ AKA NOE
AGUILAR-BENITEZ

NO. 20-KA-32

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 14-797, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING


December 30, 2020


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.


**AFFIRMED IN PART; VACATED IN PART; REMANDED**
    **RAC**
    **MEJ**

**CONCURS IN PART, DISSENTS, IN PART, WITH REASONS**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Gail D. Schlosser
     Angad Ghai
     Marko Marjanovic

COUNSEL FOR DEFENDANT/APPELLANT,
NOE A. AGULIAR-BENITEZ AKA NOE AGUILAR-BENITEZ
     Gwendolyn K. Brown

**CHAISSON, J.**

Defendant, Noe A. Aguliar-Benitez a/k/a Noe Aguilar-Benitez, appeals for

the third time, asserting that his newly imposed sentences, which resulted after a

remand from this Court for resentencing, are unconstitutionally excessive. For the

reasons that follow, we affirm the forty-year sentence imposed on defendant for his

conviction for attempted aggravated rape; however, we vacate, as

unconstitutionally excessive, the seventy-five-year sentence imposed on defendant

for his conviction for sexual battery of a victim under the age of thirteen and

remand the matter for resentencing in accordance with this opinion.

## PROCEDURAL HISTORY

On November 10, 2015, a unanimous twelve-person jury convicted

defendant of attempted aggravated rape,[1] in violation of La. R.S. 14:27 and La.

R.S. 14:42 (count one), and sexual battery of a victim under the age of thirteen, in

violation of La. R.S. 14:43.1 (count two). On December 10, 2015, after

considering the victim impact statement and the arguments of the prosecutor and

defense counsel, the trial court sentenced defendant to the statutory maximum on

each conviction. Specifically, the trial court sentenced defendant to fifty years at

hard labor without benefit of parole, probation, or suspension of sentence for his

conviction for attempted aggravated rape[2] and to ninety-nine years at hard labor

without benefit of parole, probation, or suspension of sentence for his conviction

for sexual battery of a victim under the age of thirteen.[3] In imposing the maximum

sentences, the trial court stated, in part, as follows:

---

[1] We note that defendant was charged, by a grand jury indictment, with aggravated rape of a victim under the age of thirteen, in violation of La. R.S. 14:42. In 2015, the offense defined in La. R.S. 14:42 as "aggravated rape" was redesignated as "first degree rape." *See* Acts 2015, No. 184 § 1, effective August 1, 2015. *See also State v. Aguilar-Benitez*, 16-336 (La. App. 5 Cir. 12/7/16), 206 So.3d 472, 473 n.1.

[2] The potential sentence for attempted aggravated rape is imprisonment "at hard labor for not less than ten years nor more than fifty years without benefit of parole, probation, or suspension of sentence." La. R.S. 14:42 and La. R.S. 14:27.

[3] Prior to 2006, the Louisiana Criminal Code provided for a maximum penalty of ten years for the crime of sexual battery, without any distinction being made regarding the age of the victim. La. R.S.

> This Court will note as is reflected in the victim impact statement given by the mother, the victim, that this family took Mr. Aguliar-Benitez into their home out of the kindness of their heart, gave him a place to stay when he had no place to stay. He, in this Court's opinion, committed the ultimate sin against them in stealing the innocence of this young child who no one who saw or heard the testimony of couldn't have been moved by. And this Court believes that any lesser sentence for Mr. Aguliar-Benitez on these charges would defricate [sic] the seriousness of the offense committed by him against this defenseless victim.

Defense counsel objected and filed a motion to reconsider sentence. At the subsequent hearing on that motion, defense counsel argued that the maximum sentences were excessive and pointed out that defendant did not engage in a systematic pattern of repeated abuse, that there was no evidence he had ever engaged in any behavior like this before, and that the jury came back with a lesser responsive verdict, apparently because they did not believe that there was evidence of penetration. In response, the prosecutor argued that the sentences were not excessive and reminded the trial judge of both the Children's Advocacy Center tape and the juvenile victim's testimony. After hearing arguments of counsel, the trial judge denied the motion, noting:

> The Court was here and watched and heard the testimony at the time of what was of a 10-year old victim of this sexual assault. And based on that testimony and the facts of the case in which Mr. Noe Aguliar-Benitez was welcomed into the parents' home of the minor victim and provided a place to live and while living in these people's home who had taken them in –
>
> So in any event, what the Court was – essentially, this Court found it particularly agregious [sic] that Mr. Benitez committed the crime that he committed upon the young victim that he did in the house while being provided a place to stay out of the kindness of the parents' hearts, it obviously, had a severely tramatic [sic] affect [sic] on the young victim which was evidence [sic] from her trial testimony. And this Court feels as though to sentence the defendant to anything lesser than the 99 years he was given on that count would

---

14:43.1. In 2006, the Legislature added an enhanced penalty provision for the crime of sexual battery when the victim is under the age of thirteen, with a penalty provision of imprisonment at hard labor for not less than twenty-five years nor more than life imprisonment, with at least twenty-five years of the sentence to be served without benefit of parole, probation, or suspension of sentence. In 2008, the Legislature amended the penalty provision to provide for imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years, with at least twenty-five years being served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:43.1(C)(2).

be to denegreat [sic] the seriousness of this offense and therefore, the Court denies this Motion to Reconsider Sentence.

Defendant thereafter appealed. In his first appeal, this Court found that the trial court erred by failing to dispose of defendant's motion for new trial before sentencing and, accordingly, vacated defendant's sentences and remanded the matter to the trial court for a ruling on defendant's motion for new trial. *State v. Aguliar-Benitez*, 16-336 (La. App. 5 Cir. 12/7/16), 206 So.3d 472. Pursuant to this Court's remand, the trial court, on January 26, 2017, denied defendant's motion for new trial. Thereafter, on February 23, 2017, the trial court sentenced defendant to fifty years imprisonment at hard labor for his attempted aggravated rape conviction and to ninety-nine years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for his sexual battery conviction, to be served concurrently. In imposing these maximum sentences, the trial judge noted that he took into account the victim impact statement that was previously read into the record and then stated in pertinent part:

> For the record, the Court will state, yet again, Mr. Aguliar-Benitez was in fact found guilty by a jury in this Court and during the course of this trial, the Court heard testimony from the victim, a young girl, under the age of 13 and her family. And the victim's family was kind enough to take in Mr. Aguliar-Benitez into their home and provide him with a home when he didn't have a place to live. And Mr. Aguliar-Benitez in turn took advantage of their young daughter and molested her.

> So the Court recognizes that the sentence this Court gives Mr. Aguliar-Benitez is in fact obviously a strict sentence. However, the Court in – taking in the consideration the testimony of the victim and the victim's family along with Mr. Aguliar-Benitez at trial, this Court finds that any lesser sentence would not do justice to the actually [sic] facts of this case and in fact, it raised the seriousness of the offense committed by Mr. Aguliar-Benitez.

Defendant filed a motion to reconsider sentence on February 24, 2017. At the subsequent hearing on the motion, defense counsel asked the trial judge for mercy for defendant and to sentence him to a lower sentence than the one imposed previously. Defense counsel pointed out that defendant accepted responsibility

from the beginning, that the jury found there was no penetration or that type of contact, that defendant had "no priors," and that the maximum end of the sentencing range was reserved for extreme cases. In response, the prosecutor noted that the trial judge heard the facts of this case, particularly the testimony of the victim on her birthday, and that defendant had the opportunity to plea to forty-five years and had declined that offer. Defense counsel explained that defendant would have accepted the plea, but he objected to the trial judge's requirement of castration. The trial judge agreed that he would have required defendant to undergo chemical castration in exchange for a forty-five-year sentence. He also stated in pertinent part:

> At trial, this Court had the opportunity to listen to the testimony of the child victim as well as that child's family testify. And it became abundantly clear that Mr. Benitez not only did he sexually molest and abuse a child under the age of 13 but he took full advantage of that child's family who had seemed fit out of the goodness of their heart to open their home to Mr. Benitez and give him a place to live as he didn't have a place of his own. So the fact that he violated the family's trust and violated this young girl, who this Court sat and heard and watch [sic] testify in this court, in addition to the fact that Mr. Benitez himself turned down the plea offer to the 45 years and chemical castration, based on all of that, this Court did in fact sentence Mr. Benitez the way it did because this Court said to sentence Mr. Benitez to anything less would be to denigrate the seriousness of this offense. This Court remains firmly convinced of that and therefore, denies the motion to reconsider sentence.

Defendant thereafter appealed and argued, as one of his assignments of error, the excessiveness of the imposed sentences. This Court, after a thorough discussion of the relevant factors, agreed with defendant's arguments that his sentences were excessive. As such, this Court vacated defendant's sentence for attempted aggravated rape, remanded the matter for resentencing, and suggested a sentencing range of thirty-five to forty years. This Court also vacated defendant's sentence for sexual battery of a victim under thirteen, remanded the matter for resentencing, and suggested a sentencing range of thirty-five to fifty-five years,

with both sentences to run concurrently.  *State v. Aguliar-Benitez*, 17-361 (La. App. 5 Cir. 12/10/18), 260 So.3d 1247, *writ denied*, 19-147 (La. 6/3/19), 272 So.3d 543.

On September 19, 2019, on remand, defendant appeared for resentencing. Defense counsel asked for mercy as defendant was "paying severely," had shown remorse, cooperated, and never denied anything.  Further, defense counsel asserted that defendant's behavior was a one-time incident and not a repeated or long term pattern of abuse that was consistent with maximum sentences.  Defense counsel also pointed out that this Court had stated that defendant showed remorse during his interview and had found that defendant's crimes did not warrant sentences on the higher end of the sentencing ranges because he had no prior convictions.  After considering counsel's argument, the trial court sentenced defendant, in accordance with this Court's recommended sentencing range to forty years imprisonment at hard labor for his conviction for attempted aggravated rape.  With regard to defendant's conviction for sexual battery, the trial court sentenced defendant to seventy-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, which was twenty years higher than the maximum end of this Court's recommended sentencing range.  In imposing these sentences, the trial court stated:

> Very good.  So again, this matter comes back to this Court on remand from the Fifth Circuit.  After the Fifth Circuit having found that this Court abused its discretion and sentenced Mr. Aguliar-Benitez too harshly after Mr. Aguliar-Benitez was found guilty of the attempted aggravated rape of a victim under the age of thirteen, and the sexual battery of that same victim under the age of thirteen this Court after having sat through the jury trial and heard the testimony and viewed the evidence and after the jury again convicted Mr. Aguliar-Benitez sentenced him to the maximum time that this Court could sentence him to the ninety-nine years on the sexual battery of a victim under the age of thirteen and fifty years on the attempted aggravated rape and again after review the Fifth Circuit found that to be too harsh that this Court had sentenced Aguliar-Benitez too harshly.  Obviously this Court disagrees with the Fifth Circuit

on that issue but nonetheless they control here as it relates to that and we are back here for this Court's resentencing of Mr. Aguliar-Benitez, but there are some things that need to be clear from the record because when asked to show mercy to Mr. Aguliar-Benitez because he cooperated and it was a one time event that actual [sic] is not consistent with what the testimony was at the trial of this matter. The victim, again a young girl under the age of thirteen, testified and had to take the witness stand here before a jury of strangers and testify that some series of events that occurred to her and did not testify that it was a one time event. Mr. Aguliar-Benitez said it was a one time event, and he said that only after being confronted first by the victim's father while the young victim and her mother and other family members as the testimony was, went and drove into the Winn-Dixie parking lot and prayed while the father confronted Mr. Aguliar-Benitez. Mr. Aguliar-Benitez being an individual who knew the father of the victim and family of the victim saw fit to take into their home out of the kindness of their heart because he was not from the United States and didn't have a place to stay and apparently didn't have other family, so out of the goodness of their heart they took him in and gave him a place to stay, and unfortunately during that time Mr. Aguliar-Benitez took advantage of their trust and molested their young daughter and very telling to this Court is at one point the young girl testified that she wanted to—She was so scared and shaken she wanted to kick Mr. Aguliar-Benitez in his arm. He had a cast on his arm at the time from a work related injury, but she was afraid that she [sic] might die as a result of that kick. So here is this young girl under thirteen being molested and showing compassion to her molester. That's compassion that maybe Mr. Aguliar-Benitez deserved or not, but when asked for compassion from this Court, this Court's rulings are based on the evidence that was presented here in the courtroom, and so, Mr. Aguliar-Benitez, all of that having been said this Court at this time sentences you after, again having been found guilty by the jury of attempted aggravated rape of a child under the age of thirteen this Court sentences you to forty years at hard labor in the Department of Corrections. You are to be given credit for all time previously served on that charge.

On the charge of sexual battery of a child under the age of thirteen, this Court sentences you to seventy-five years at hard labor in the Department of Corrections. That sentence is to be served without benefit of probation, parole or suspension of sentence. By law you are to be given credit for all time previously [sic] on that charge, and those sentences are ordered to run concurrently with one another.

Defense counsel objected to the sentences and subsequently filed a motion for reconsideration of sentence pursuant to La. C.Cr.P. art. 881.1. In addition, defendant filed a *pro se* motion to reconsider sentence. Both motions were denied following a hearing on November 14, 2019. Defendant now appeals for a third time.

# DISCUSSION

On appeal, defendant challenges his sentences as unconstitutionally excessive and specifically notes that the sentences were imposed in "direct defiance" of this Court's directive regarding appropriate sentencing ranges. He contends that this Court set a term of thirty-five to forty years as an appropriate sentencing range for defendant's conviction for attempted aggravated rape and a term of thirty-five to fifty-five years as an appropriate sentencing range for his conviction for sexual battery of a victim under thirteen. Defendant asserts that despite this Court's clear statement that greater sentences would be deemed excessive, the trial court imposed sentences of forty years and seventy-five years, respectively, for the two offenses. He further asserts that although the trial court was more detailed when it articulated support for the new sentences, the trial court provided no factual details that were previously unknown to this Court. Defendant argues that the new sentences are excessive for the same reasons previously articulated by this Court. He points out that he does not have a criminal history and that the facts of this case are not such that the crimes fall into the worst in their class of offenses.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment but further explicitly prohibits excessive punishment. A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly disproportionate to the severity of the crime. *State v. Davis*, 449 So.2d 452, 453 (La. 1984). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Priest*, 18-518 (La. App. 5 Cir. 2/6/19), 265 So.3d 993, 1005, *writ denied*, 19-418 (La. 5/20/19),

271 So.3d 201, *appeal after remand*, 20-72 (La. App. 5 Cir. 9/9/20), 303 So.3d 394.

A trial judge is given wide discretion to impose a sentence within statutory sentencing ranges. However, a sentencing judge does not possess unbridled discretion to impose a sentence within statutory limits. *State v. Arceneaux*, 18-642 (La. App. 5 Cir. 4/24/19), 271 So.3d 362, 367, *appeal after remand*, 19-472 (La. App. 5 Cir. 1/29/20), 290 So.3d 313, *writ denied*, 20-324 (La. 5/14/20), 296 So.3d 608. In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and of the offender. *State v. Sepulvado*, 367 So.2d 762, 766 (La. 1979). The "interactivity between the range of permissible statutory criminal sanctions and the individualized facts of each case creates a sliding fact-variant spectrum for a trial judge's discretion under each criminal statute for each particular criminal defendant." *State v. Hamdalla*, 12-1413 (La. App. 4 Cir. 10/2/13), 126 So.3d 619, 627, *writ denied*, 13-2587 (La. 4/25/14), 138 So.3d 642; *State v. Priest*, 265 So.3d at 1005. Thus, the range of discretion granted a sentencing judge in handing down a sentence fluctuates depending on the interactivity of the facts of a particular case, the permissible criminal sanctions, and the range of conduct prohibited by the particular criminal statute that the defendant is convicted of violating. *State v. Hamdalla*, 126 So.3d at 627.

An appellate court cannot set aside a sentence absent a manifest abuse of discretion. When reviewing a sentence for excessiveness, the relevant inquiry is not whether a different sentence might have been more appropriate, but whether the district court abused its vast sentencing discretion. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4. Part of the abuse of discretion inquiry requires a court to consider the crime and the punishment given in light of the crime's harm to society

and gauge whether the penalty is so disproportionate as to shock its sense of justice. *State v. Wilmot*, 13-994 (La. App. 5 Cir. 5/14/14), 142 So.3d 141, 148-49.

In determining whether the trial court abused its sentencing discretion, a reviewing court should consider: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same and other courts. *State v. Bruce*, 11-991 (La. App. 5 Cir. 10/30/12), 102 So.3d 1029, 1035, *writ denied*, 12-2568 (La. 4/26/13), 112 So.3d 839.

In our prior opinion, this Court considered these factors and concluded that the imposition of the maximum sentences upon this particular defendant, under the particular circumstances of this case, was excessive. As a result, this Court vacated defendant's sentences and remanded the matter to the trial court for resentencing, with recommendations of constitutionally reasonable sentencing ranges. *State v. Aguliar-Benitez*, 260 So.3d at 1266-67.

With regard to defendant's sentence for his attempted aggravated rape conviction, this Court recommended a sentencing range of thirty-five to forty years. The trial court in the instant case resentenced defendant to forty years at hard labor, which is within the sentencing range set forth by this Court as being constitutionally reasonable. Accordingly, for the reasons previously articulated by this Court in its analysis of the excessiveness of the original sentence imposed for this offense, and its recommendation of a constitutionally reasonable sentence, we do not find the forty-year sentence imposed upon defendant for his conviction for attempted aggravated rape to be unconstitutionally excessive.

Regarding defendant's sentence for his conviction for sexual battery of a victim under the age of thirteen, this Court, upon finding defendant's ninety-nine-year sentence excessive, suggested a constitutionally reasonable sentencing range of thirty-five to fifty-five years. On remand, the trial court sentenced defendant to seventy-five years at hard labor, which is twenty years more than the maximum

end of this Court's recommended sentencing range. We are now tasked with determining whether this sentence is unconstitutionally excessive.

We are well aware of the trial court's vast discretion in the imposition of sentences upon defendants convicted of crimes. Furthermore, we recognize that although we can recommend an appropriate sentence pursuant to La. C.Cr.P. art. 881.4, the trial court, upon resentencing, is not bound to adhere to this Court's recommendation, and we cannot force the trial court to impose a particular sentence.[4] However, this Court has a duty, as recognized by the Louisiana Supreme Court, to overturn sentences, even upon resentencing, that because of their disproportionate nature, inflict excessive retribution on an offender. *State v. Thompkins*, 18-2104 (La. 6/17/19), 274 So.3d 1252, 1253.

Unlike sentences that are being reviewed for the first time by an appellate court for excessiveness, sentences imposed upon resentencing that are greater than the sentencing range recommended by the appellate court upon initial review, add an additional element that must be considered by the second reviewing panel. Because the initial review, analysis and recommendation of the first appellate panel was not a meaningless exercise, we find that, in addition to application of the previously stated principles regarding appellate review of sentences for unconstitutional excessiveness, we must also consider the prior panel's recommendation and determine whether the trial court, upon resentencing, has articulated a sufficient justification for its departure from that recommendation.

We acknowledge that this Court has affirmed sentences that were outside this Court's suggested sentencing range, and we look to those cases for guidance as

---

[4] We recognize the logic and practicality of the appellate court providing guidance to the trial court of an appropriate sentencing range upon remand for resentencing. *See State v. Suire*, 02-411 (La. App. 3 Cir. 10/2/02), 827 So.2d 569 (where the appellate court provided no recommended sentencing range after vacating the original sentence as excessive, and then, upon a second appeal, again found the new sentence upon remand to be unconstitutionally excessive and vacated it also).

to the analysis that the subsequent reviewing panel utilizes in determining whether the sentence imposed upon resentencing is unconstitutionally excessive.

In *State v. Dixon*, 18-79 (La. App. 5 Cir. 8/29/18), 254 So.3d 828, *writ denied*, 18-1909 (La. 4/8/19), 267 So.3d 606, in defendant's first appeal, this Court found the defendant's concurrent sentences of ninety-nine years at hard labor without benefits for two counts of sexual battery of a juvenile under the age of thirteen to be unconstitutionally excessive. This Court thereafter vacated the defendant's sentences and, pursuant to La. C.Cr.P. art. 881.4(A), recommended a sentencing range of thirty-five to forty years imprisonment at hard labor to run concurrently. On remand, the trial court declined to follow this Court's recommendation and resentenced the defendant to concurrent eighty-year sentences on each sexual battery count. This Court, on appeal after remand, affirmed the eighty-year sentences, explaining that it did not follow the prior panel's recommendations regarding sentencing because during the second sentencing hearing, the trial court provided additional reasons for sentencing, including the defendant's exploitation of his position of trust and authority over his two-year-old sister. This Court also asserted in its reasoning that the trial court had reduced the maximum sentences imposed by almost twenty years. *State v. Dixon*, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, *writ denied*, 20-143 (La. 7/17/20), 298 So.3d 176.

Likewise, in *State v. Arceneaux*, 290 So.3d at 313, this Court affirmed a sentence that was higher than the sentencing range suggested by this Court in its previous opinion. *See State v. Arceneaux*, 18-642 (La. App. 5 Cir. 4/24/19), 271 So.3d 362. In affirming a sentence that was ten years more than the suggested sentence, this Court noted that the defendant's enhanced sentence fell within the sentencing range of previous cases similar to the defendant's sentence and further

noted that the extent of the defendant's criminal history was not contained in the prior appellate court record.

In these two cases, this Court noted that the trial court provided additional reasons and additional information, which was apparently not before the first reviewing panel, to support the imposition of a sentence greater than the ones recommended by this Court in the prior appeals. Our review of these cases leads us to the conclusion that, before this Court will affirm a sentence upon resentencing that is greater than the recommendation of the first reviewing panel, the trial court must articulate some compelling reason, or provide additional pertinent information that was not before the first reviewing panel, that justifies the new sentence.[5]

In this case, upon resentencing, the trial court again focused upon the fact that defendant was brought into the home of the victim's family and given a place to live when he had no place to stay, and that defendant "took advantage of their trust and molested their young daughter." However, we note that this information was before this Court in defendant's prior appeal as evidence testified to by the victim's family at trial. Additionally, this Court was aware that the trial court considered this an important factor in its original sentencing, as the trial court stated during that sentencing that the victim's family brought defendant "into their home out of the kindness of their heart, [and] gave him a place to stay when he had no place to stay." This Court, in its discussion of defendant's sentence in his prior appeal, stated that "when defendant fell on hard times, he was invited to live in their family home and was provided his own room and bathroom." *Aguliar-Benitez*, 260 So.3d at 1263. This Court also noted the closeness of the relationship between the victim and defendant, and quoted in its entirety the victim impact

---

[5] *State v. Dixon* and *State v. Arceneaux* are the only reported cases in our Circuit that our research reveals where the sentencing court declined to follow the recommendations of the appellate court on resentencing.

statement made by the victim's mother wherein she explained defendant's violation of her family's trust. *Id*. at 1263-64. Consequently, this sentencing factor is not new or additional information unknown to this Court in defendant's prior appeal.

The trial court, upon resentencing, also emphasized that, contrary to defendant's assertion at resentencing, his abuse of the victim was not a one-time event. The trial court stated that the victim testified that it was "some series of events that occurred to her." Again, however, this Court was aware of and considered this fact, having stated in its prior opinion that "E.M.P. recounted that defendant had touched 'her private part' on other instances," and "[a]lthough it is not completely clear how many times defendant abused E.M.P., there is little evidence to prove a prolonged pattern of abuse nor that penetration occurred during the June 2013 incident." *Id*. at 1253 and 1264. Our careful reconsideration of the evidence presented at trial confirms that the primary and more detailed accusation against defendant was regarding the June 2013 incident, and that accusations of other incidents of abuse were more generalized as occurring over the approximate eight month period that defendant lived with the victim's family, with no specific number of other incidents stated. Consequently, this sentencing factor is not new or additional information unknown to this Court in defendant's prior appeal.

The trial court also noted upon resentencing the fact that the victim showed compassion for defendant, recounting how the victim wanted to kick defendant's broken arm, which was in a cast, but did not do so because she was afraid it might kill him. Although the trial court did not mention this fact in its initial sentencing of defendant, this Court was clearly aware of this fact from the record, having stated in its prior opinion that "E.M.P. explained that she wanted to kick defendant in his arm – which was in a cast after a work-related injury – but she feared a kick

to defendant's arm would kill him." *Id*. at 1253. Consequently, this sentencing factor is not new or additional information unknown to this Court in defendant's prior appeal.

We find nothing in the trial court's statement at resentencing that provides this Court with any additional justification for a sentence outside the range of what we previously considered to be constitutionally reasonable for this particular defendant under the circumstances of this particular case. The trial court stated no facts and no additional reasons that were not known to and considered by this Court in its prior determination that a sentencing range of thirty-five to fifty-five years would be constitutionally reasonable.

In this Court's prior opinion, we thoroughly analyzed the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by the same and other courts and thereafter concluded that the trial court abused its vast discretion in sentencing defendant to ninety-nine years. This Court recognized the seriousness of this offense, the ongoing suffering the young victim must endure and the lifelong impact this may have upon her, but found that defendant's crime did not fit the category of the most serious violations of the offense charged committed by the worst type of offender necessary for a maximum sentence. After a careful consideration of all sentencing factors, this Court determined that a sentencing range of thirty-five to fifty-five years for his sexual battery conviction would be constitutionally reasonable.

We find nothing in the trial court's statement upon resentencing that provides a compelling reason, or provides additional pertinent information that was not before this Court in defendant's prior appeal, that would justify a deviation from this Court's prior recommended sentencing range. We continue to recognize the seriousness of this offense, the ongoing suffering the young victim must endure and the lifelong impact this may have upon her. However, for the extensive

reasons set forth in our prior opinion, and the additional reasons articulated herein, we find the seventy-five-year sentence imposed on defendant for his conviction for sexual battery of a victim under the age of thirteen to be unconstitutionally excessive under the circumstances of this case. *See State v. Aguliar-Benitez*, 260 So.3d at 1261-66.

We particularly note that defendant had no prior criminal background, showed remorse, and would apparently have pled guilty had castration not been a requirement of the plea agreement. Further, while we recognize the reprehensible nature of defendant's crime and that defendant exploited a position of trust, we note that there was little evidence of a prolonged pattern of abuse or that penetration occurred.

Additionally, in furtherance of consideration of the third factor appellate courts should consider in reviewing a sentence for unconstitutional excessiveness, we have again undertaken a review of sentences imposed for similar crimes by the same and other courts. In our research of cases in the past fourteen years since the Louisiana Legislature, in 2006, provided an enhanced penalty for the crime of sexual battery when the victim is under the age of thirteen, we have located only a few reported cases in which defendants have received sentences of seventy-five years or greater.[6]

---

[6] We note that after the Louisiana Legislature, in 2006, added an enhanced penalty for the crime of sexual battery when the victim is under the age of thirteen, and thereafter amended that penalty provision in 2008, thereby authorizing a maximum penalty eighty-nine years greater than the maximum penalty previously provided for in all sexual battery cases, defendants have been sentenced to the widely varying sentences of the minimum of twenty-five years (*see*, *e.g.*, *State v. Lim,* 20-20 (La. App. 5 Cir. 9/22/20), 304 So.3d 114; *State v. Luckey*, 16-494 (La. App. 5 Cir. 2/8/17), 212 So.3d 1220, *writs denied*, 17-432 (La. 10/27/17), 228 So.3d 1225 and 17-617 (La. 10/27/17), 228 So.3d 1234; *State v. Gibson*, 09-486 (La. App. 5 Cir. 3/9/10), 38 So.3d 373, *writ denied*, 10-802 (La. 11/5/10), 50 So.3d 814; *State v. Johnson*, 11-1213 (La. App. 4 Cir. 2/7/13), 109 So.3d 994, *writ denied*, 13-554 (La. 11/1/13), 124 So.3d 1106; *State v. Ray*, 12-1217 (La. App. 3 Cir. 5/1/13), 157 So.3d 13; and *State v. Hawkins*, 11-193 (La. App. 4 Cir. 11/16/11), 78 So.3d 293, *writ denied*, 11-2782 (La. 4/13/12), 85 So.3d 1246) to the maximum sentence of ninety-nine years (*see*, *e.g.*, *State v. Wilmot*, 13-994 (La. App. 5 Cir. 5/14/14), 142 So.3d 141; *State v. Cole*, 19-33 (La. App. 1 Cir. 9/27/19), 288 So.3d 146, *writ granted in part*, 19-1733 (La. 10/6/20), 302 So.3d 524; and *State v. Blake*, 50,732 (La. App. 2 Cir. 6/22/16), 198 So.3d 181, *writ denied*, 16-1456 (La. 5/26/17), 221 So.3d 80). We also note that the sentences of defendants convicted for sexual battery of a victim under thirteen, whose crimes are deemed to be the worst of the worst and who therefore receive sentences on the high end of the sentencing range, are on par with defendants convicted for second degree murder and aggravated rape. In our opinion, crimes with such a vast sentencing range in

In *State v. Wilmot*, *supra*, this Court affirmed the defendant's sentence of ninety-nine years. The defendant, who was the live-in boyfriend of the victim's mother, began sexually abusing the victim when she was six years old and they lived in South Carolina. The abuse continued after they moved to Louisiana, until the victim was approximately eleven years old, and consisted of touching and licking her vagina, as well as vaginal and anal intercourse. The defendant was convicted of both aggravated rape and sexual battery, receiving ninety-nine year consecutive sentences on each count.

In our prior opinion in the present case, in our extensive analysis distinguishing *Wilmot*, we concluded that the crime in *Wilmot* "was particularly heinous as the sexual abuse continued for years." 260 So.3d at 1264. This Court noted in its opinion that "[a]ccording to the victim, the pattern of abuse began with touching and oral sex performed by defendant, and as the victim got older the abuse escalated to the point where the defendant engaged in two instances of vaginal sex and one instance of anal sex. The defendant also forced the victim to perform oral sex on him." *Id*. We noted that "the victim displayed a clear trust for defendant, referring to him as 'daddy'." Additionally, in the defendant's initial confession after his arrest, he attempted to blame his twelve-year-old victim by maintaining that "the sexual contact was initiated by the victim." *Id*. at 1264-65. We reaffirm our opinion that, although the defendant in *Wilmot* had no prior convictions, the sexual abuse perpetrated by the defendant upon the victim in that case was particularly heinous and clearly distinguishable from the present case.

In the present case, the trial court, upon resentencing defendant to seventy-five years for sexual battery, again emphasized that it considered the fact that

---

their penalty provisions, present a greater challenge to sentencing courts in their efforts to impose gradated sentences according to the individualized circumstances of the offense and the offender, while maintaining some degree of consistency with sentences imposed upon other defendants for the same crime.

defendant had exploited a position of trust to commit sexual battery upon the victim. We acknowledge that in *Wilmot*, this Court stated that "the jurisprudence indicates that maximum, or nearly maximum terms of imprisonment *may not be excessive* when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile." *Wilmot*, 142 So.3d at 149 (*citing State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, *writ denied*, 01-2965 (La. 10/14/02), 827 So.2d 414)(emphasis added).

We note that the quoted language from *Wilmot* indicates that maximum sentences *may not be excessive* when the exploitation of trust factor is present, not that this factor, standing alone, is necessarily sufficient to justify a maximum sentence.[7] Indeed, our review of reported cases since 2006 of sexual battery of a victim under thirteen reveals that the overwhelming majority of cases involve situations where the defendants have exploited a position of trust and authority over the victim. If this factor, standing alone, is sufficient to justify a near-maximum sentence, then the overwhelming majority of defendants should have received these sentences. Yet, as stated, only a few reported cases since 2006 reveal such sentences.[8]

---

[7] The Court in *Wilmot* also failed to note the maximum sentence for sexual battery at the time of the crime in *Badeaux* was ten years, a difference of eighty-nine years.

[8] We note that a number of reported cases for the crime of sexual battery of a victim under thirteen, including recent cases out of the same judicial district as the present case, where the defendants exploited positions of trust, were sentenced to the minimum, or near minimum, sentence of twenty-five years, and in our view are more egregious than the conduct of the present defendant. *See*, *e.g.*, *State v. Luckey*, *supra* (defendant was sentenced to twenty-five years for sexually abusing the seven and four-year-old daughters of his live-in girlfriend over a fifteen month period); *State v. Gibson supra* (victim, who was daughter of defendant's live-in girlfriend testified that defendant would "put his private in my private, and he would put his private in my butt, and he would make me play with his private with my hand;" victim further testified abuse took place over a two-year period when she was seven to nine years old; defendant was charged with one count of aggravated rape, but was convicted of the lesser included offense of sexual battery and sentenced to twenty-five years); *State v. Ray*, *supra* (victim testified that defendant, who was the fiancé of the victim's mother and in his mid-fifties, "inserted his finger into her vagina on approximately ten occasions" when she was between the ages of ten to eleven years old; defendant was sentenced to twenty-five years for one count of sexual battery); *State v. Hawkins*, *supra* (defendant, friend of six-year-old victim's mother, was charged with aggravated rape for making victim perform oral sex upon him while he babysat her; defendant was found guilty of lesser included offense of sexual battery and sentenced to twenty-five years); and *State v. Pontiff*, 14-1049 (La. App. 3 Cir. 5/6/15), 166 So.3d 1120, *writ denied*, 15-1107 (La. 10/28/16), 209 So.3d 94 (defendant was accused of oral sexual battery of his girlfriend's thirteen-year-old son and sexual battery of her eight-year-old son, occurring on more than one occasion; the defendant, who had prior felony arrests and a prior felony conviction for

Similar to *Wilmot*, we also find that other reported cases in which defendants received sentences of seventy-five years or greater for sexual battery of a victim under thirteen to be distinguishable from the instant case. In *State v. Cole*, 19-33 (La. App. 1 Cir. 9/27/19), 288 So.3d 146, *writ granted in part*, 19-1733 (La. 10/6/20), 302 So.3d 524, the defendant's ninety-nine-year sentence was affirmed where the defendant was the victim's step-grandfather with whom she occasionally lived, he repeatedly and regularly abused her from when she was eight years old to fifteen years old, such abuse consisting of "touching her almost every night" and eventually vaginally and anally raping her. Additionally, three of the defendant's nieces testified at trial, pursuant to La. C.Cr.P. art. 412.2, that the defendant had sexually abused each of them approximately thirty years earlier.

In *State v. Blake*, 50,732 (La. App. 2 Cir. 6/22/16), 198 So.3d 181, *writ denied*, 16-1456 (La. 5/26/17), 221 So.3d 80, the defendant's ninety-nine-year sentence was affirmed where the defendant was a friend of the victim's father and lived in the home with them, the five-year-old victim had stated that the defendant licked her vagina, made her watch a pornographic movie, and masturbated in front of her, and in his recorded statement to the police, the defendant attempted to blame the five-year-old victim as being promiscuous, claiming that "she came on to him." Additionally, the defendant had seven prior felony convictions and had failed to comply with any of his prior parole restrictions.

Finally, in *State v. Dixon*, *supra*, this Court affirmed the defendant's eighty-year sentence where the defendant sexually abused his two-year-old sister, who was completely defenseless to protect herself, and created pornographic recordings of the abuse that he shared with others. We also note that, although this Court affirmed the defendant's eighty-year sentence in his second appeal, the panel of

---

indecent behavior with a juvenile, was convicted of the sexual battery offense and received a sentence of thirty years).

this Court in the defendant's first appeal had recommended a sentencing range of thirty-five to forty years.

Our review of these cases reinforces our prior recommendation that a constitutionally reasonable sentence in this case for the crime of sexual battery, considering the individualized circumstances of this offense and this offender, is a sentencing range of thirty-five to fifty-five years, to run concurrently with defendant's sentence for attempted aggravated rape.

## CONCLUSION

Accordingly, for the reasons set forth herein, we affirm defendant's sentence of forty years for his conviction of attempted aggravated rape, but we vacate his sentence of seventy-five years for his conviction for sexual battery of a victim under the age of thirteen, and we remand the matter for resentencing consistent with this opinion.

**AFFIRMED IN PART;
VACATED IN PART;
REMANDED**

STATE OF LOUISIANA                    NO. 20-KA-32

VERSUS                                FIFTH CIRCUIT

NOE A. AGULIAR-BENITEZ AKA NOE        COURT OF APPEAL
AGUILAR-BENITEZ
                                      STATE OF LOUISIANA


**J. MOLAISON, CONCURS IN PART, DISSENTS, IN PART, WITH**

**REASONS**

   While I concur that the defendant's conviction and sentence for

attempted aggravated rape should be affirmed, I respectfully dissent from

the portion of the majority opinion that vacates his sentence for the sexual

battery of a minor based on constitutional excessiveness. In summary, I

believe that vacating the defendant's sentence for sexual battery, on the

record presented, completely discounts the seriousness of the multiple

offenses committed by the defendant, robs the trial court of its due

discretion, and sets a bothersome precedent for future panels of this Court

to follow.

   I agree with the majority on several pertinent points. Sentencing

judges are not given unbridled discretion to impose a sentence. When

reviewing a sentence for excessiveness, this Court's role is not to decide

whether a more lenient punishment for a defendant's crime might have

been more appropriate, but only to determine whether the district court

abused its vast sentencing discretion to the point where it shocks one's

conscience to allow such a sentence to stand. The majority correctly

provides the standard of review and criteria for determining whether the

trial court has abused its discretion in this case.[1]  I also concur with most of

the majority's findings under those same criteria.  Specifically, I agree that

the crimes of the defendant have imposed upon this young victim an

"ongoing suffering" that she must endure throughout her lifetime.  I, too

find the defendant's multiple assaults on an eight-year-old victim to be

"reprehensible" and believe that these acts were accomplished by

exploiting the trust of the child victim and her family.  Finally, I

acknowledge the holding of the cases cited by the majority.  These cases

support the sentence imposed by the trial court.[2]

Where my view diverges from the majority is with their apparent

conclusion that the consideration of extraneous or irrelevant factors can

serve as the basis to upend a legal sentence.

Sufficiency of the evidence to support the defendant's conviction for

sexual battery of a minor is not at issue here.  Specifically, the jury found

that all necessary elements of the crime were proved beyond a reasonable

doubt, as required in La. R.S. 14:43.1.[3]  It is significant that the plain

---

[1] The factors being: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same and other courts.

[2] *See State v. Dixon,* 18-79 (La. App. 5 Cir. 8/29/18), 254 So.3d 828, *writ not considered,* 18-1909 (La. 2/18/19), 263 So. 3d 1154, *reconsideration granted,* 18-1909 (La. 4/8/19), 267 So.3d 606, *and writ denied,* 18-1909 (La. 4/8/19), 267 So.3d 606, *appeal after resentencing*, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, *writ denied*, 20-143 (La. 7/17/20), 298 So.3d 17.

[3] Defendant's sexual abuse of the victim was recounted by this Court in his previous appeal, *State v. Aguliar-Benitez*, 17-361 (La. App. 5 Cir. 12/10/18), 260 So.3d 1247, 1253, *writ denied*, 19-147 (La. 6/3/19), 272 So.3d 543:

> During that interview, E.M.P. recounted the details of her abuse.  E.M.P. explained that defendant was living at the family home, and that she liked defendant, until he "did things [she] didn't like." Regarding the June 2013 incident, E.M.P. said she and defendant were watching television on the sofa in the living room when defendant started touching her leg.  E.M.P told defendant to stop touching her, but defendant continued to touch her, including her "private part." E.M.P. told Ms. Bergeron that defendant pulled her shorts to the side, pulled his pants down, and touched "the skin of his private" against her private.  During the interview E.M.P. could not recall whether defendant put "his private inside her private." E.M.P. explained that she wanted to kick defendant in his arm—which was in a cast after a work-related injury—but she feared a kick to defendant's arm would kill him.
>
> E.M.P. recounted that defendant had touched "her private part" on other instances. E.M.P. told Ms. Bergeron that she thought defendant attempted to touch her on the upper thigh, but E.M.P. went outside the house, where two of her father's co-workers were, to avoid defendant's touching her.

wording of the sexual battery of a minor statute only requires a *single* act against a victim to constitute the crime.  The word "penetration" does not appear anywhere in the provisions of the statute.  Accordingly, I do not follow the majority's reasoning of using these factors as justification for finding the defendant's sentence unconstitutional, especially considering the testimony of the victim that the defendant sexually abused her on more than one occasion.  I vehemently disagree with any implied conclusion that certain types of sexual abuse against children are less harmful to the victim, or that the frequency of an offense makes it more tolerable to society than others, and therefore those convicted of these heinous crimes should receive sentences that are easier and convenient for a defendant to serve.[4]

---

[4] Courts and legislatures alike have explicitly recognized that danger that sex offenders pose to our society.  As noted generally by the Supreme Court in *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 1153, 155 L. Ed. 2d 164 (2003):

> The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class.  The risk of recidivism posed by sex offenders is "frightening and high." *McKune v. Lile*, 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002); see also id., at 33, 122 S.Ct. 2017 ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault" (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997))).

In *State ex rel. Olivieri v. State*, 00-0172 (La. 2/21/01), 779 So. 2d 735, 747, the Louisiana Supreme Court discussed the governmental interest that prompted measures such as Megan's Law, which mandates the registration and tracking of convicted sexual predators:

> LA.REV.  STAT. ANN. § 15:540 (1992) sets out the legislative findings and the purpose behind Louisiana's Megan's Law.25 It provides
>
> A.  The legislature finds that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest.
>
> . . .
>
> These enactments were further founded on the findings of the Legislature that this legislation was of paramount governmental interest because: (1) sex offenders pose a high risk of engaging in sex offenses, (2) sex offenders have a high incidence of recidivism, and (3) unless there was registration and community notification, sex offenders could remain hidden and thereby increase the risk to public safety.

For the defendant's victim, the lifelong damages from his crimes against her will undoubtedly never be easy nor convenient, nor is it likely that she will make a distinction in her mind of what acts against her were more or less wounding, scarring, deviant, traumatic and debilitating than the others.

For the crime of sexual battery upon his child victim, upon resentencing, the defendant received twenty-four (24) years less than the possible ninety-nine (99) year sentence sanctioned under La. R.S. 14:43.1. Thus, this is not an instance where a defendant received the maximum or even the near-maximum sentence.[5] Yet, on the one hand, while acknowledging that courts of appeal do not have jurisdiction to impose original sentences, the majority opinion then goes on to follow a disturbing trend which, essentially, does just that. As the majority opines, "certainly there is logic and practicality" in the appellate court guiding the trial court of an appropriate sentencing range upon remand for resentencing. So much so, that the legislature has codified this ability for the courts in La. C.Cr.P. art. 881.4. While the majority acknowledges that the sentencing recommendation of an appellate court is not binding on a trial court, it fails to address two important pre-emptive caveats: LSA-C.Cr.P. Art. 881.4 is *permissive* and mandates that "[T]he appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed."

In this case, I believe that using this Court's published opinions to deliver "strong suggestions" to the trial court that reduced sentences for those convicted of some of the most despicable acts in our criminal code

---

[5] For this reason, I find the majority's reliance on *State v. Wilmot*, 13-994 (La. App. 5 Cir. 5/14/14), 142 So.3d 141, and the "position of trust" factor discussed therein, to be misplaced as a basis for reducing the instant sentence. The majority assumes for the sake of this argument that 24 years less than the maximum is a "near maximum sentence".

are appropriate is, at best, a fundamental misapplication of an appellate court's role and function. At worst, it is an unwarranted overstep into the trial judge's courtroom, made more abrasive by not so subtle inferences that surely, the trial judge is incapable of reaching a just and legal result through his or her own effort, observation, and reasoning. Compounding all these factors is the majority's adoption of the defendant's theory that, as a matter of law, "[T]he trial court erred by imposing constitutionally excessive sentences in direct defiance of this Court's directive regarding an appropriate sentencing range for this defendant." There can be no "defiance" when a "directive" is nothing more than a non-binding suggestion.

We live in an era that pays attention to the testimony of victims, and the impact of what suffering at the whim of a sexual predator does to the course of their lives. Perhaps no one is in a greater position to balance the grievous nature of these offenses against a fair and appropriate sentence for one convicted of this type of crime than the judge overseeing the proceedings.

Concerning the victims, the trial court judge sees firsthand what effect the abuse has had on a young man or woman when they must recount, in a public forum, the events that have scarred them in secret. Similarly, the trial judge also sees the impact that these crimes have upon a victim's family, who also suffer greatly. Finally, the judge has a clear vantage point from the bench of whether a convicted defendant accepts responsibility for his actions and shows remorse for what he has done, or if he discounts the damage left in the wake of his actions.

However, the factors that are evident to a trial judge who has presided over this type of case, having witnessed the demeanor of witnesses, and listened to the spoken words of both the victim and a defendant are far less obvious in the pages of a cold record. For this reason, a trial court's rulings receive deference from a

reviewing court. In this case, I find that the trial court adequately set forth the reasons for the defendant's sentence, which are all supported by the record.

Last, and least important to this discussion, the majority sets forth precedent that could have the unintended effect of discouraging independence and judicial discretion among differing panels of this court, who may be randomly allotted to decide consecutive appeals for any defendant. While uniformity on a point of law from any given appellate court is desirable, such a goal is not always reachable or realistic. The majority's synthesis of a new rule, that the correctness of a prior panel's ruling must stand unless new or additional information is added to a subsequent appeal, in my opinion, speaks more to diplomacy involved in publicly disagreeing with a fellow judge's prior conclusion and less to providing an exception for the judicially created doctrine of "law of the case."[6] The very premise of appellate review is that a different judge on a different day can reach a different conclusion from the one who adjudicated it first.[7]

The final piece of the majority's justification for vacating the defendant's sentence, based solely upon the *Dixon* and *Arceneaux*[8] cases, is that the trial court in the instant case failed to "articulate some compelling reason, or provide

---

[6] As explained by the First Circuit in *Brumfield v. Dyson*, 418 So.2d 21, 23 (La. App. 1 Cir.), *writ denied*, 422 So.2d 162 (La.1982):

> It has been said that this doctrine [of law of the case] is merely one of practice or court policy, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in its application. The doctrine should not be applied where to do so would accomplish an obvious injustice, or where the former appellate decision was clearly, palpably, or manifestly erroneous. *See Petition of Sewerage & Water Board of New Orleans*, 278 So.2d 81 (La.1973); *Wascomb v. American Indemnity Corporation*, 383 So.2d 1037 (La.App. 1st Cir. 1980), *writ granted* 385 So.2d 256 (La.1980).

[7] A deeper analysis of the cases relied upon by the majority to set guidelines for one panel of court that reviews another panel's sentencing recommendation in a prior appeal shows that in *State v. Dixon, supra,* there were two new judges on the panel for the second appeal that overruled the first panel's sentencing recommendations. Similarly, in *State v. Arceneaux*, 18-642 (La. App. 5 Cir. 4/24/19), 271 So.3d 362, 367, *appeal after remand*, 19-472 (La. App. 5 Cir. 1/29/20), 290 So.3d 313, *writ denied*, 20-324 (La. 5/14/20), 296 So.3d 608, there were two new judges on the panel for the second appeal, who disagreed with the prior panel's recommendation. By way of contrast, the panel in the instant case has two of the original members from the defendant's prior appeal, both of whom found the defendant's sentence unconstitutionally excessive.

[8] *State v. Arceneaux, supra.*

additional pertinent information that was not before the first reviewing panel." Yet, a reading of these same cases for guidance on this new rule raise more questions than they provide answers.

A side by side reading of the two *Dixon* opinions identifies the "additional pertinent information" as the trial court reduced the defendant's sentence from the maximum possible sentence by 20 years and providing additional reasons for sentencing. The court gave several reasons for sentencing "including the defendant's exploitation of his position of trust and authority over his two-year-old sister." In the instant case, upon resentencing, the trial court lowered the defendant's sentence a total of twenty-four (24) years from a maximum of ninety-nine (99) years to seventy-five (75) years. The trial court also noted that the victim's family brought the defendant into their home and provided for him; yet the defendant "took advantage of their trust and molested their young daughter." Under the majority's formula, the fact of a lesser sentence in the instant case would constitute new information, as it did in *Dixon*. Yet, the majority would distinguish *Dixon* from the instant case on the premise that a factor for imposing sentence articulated by the trial judge "was before this Court in defendant's prior appeal as evidence testified to by the victim's family at trial." Does this make the information any less significant? In *Dixon*, was the factor that an adult man using his two-year-old sister to produce child pornography as he molested her while exploiting "his position of trust and authority," truly not considered by the first panel on appeal until the trial judge articulated it upon resentencing?

The majority would distinguish *Arceneaux* from the instant case on the basis that, "[I]n affirming a sentence that was ten years more than the suggested sentence, this Court noted that the defendant's enhanced sentence fell within the sentencing range of previous cases similar to the defendant's sentence and further noted that the extent of the defendant's criminal history was not contained in the

prior appellate court record." As noted above, in the instant case, the defendant's sentence falls within the sentencing range of previous cases similar to the defendant's sentence. In *Arceneaux*, on remand, the defendant was adjudicated as a multiple offender by the trial court using the same predicate convictions from his first sentencing. At the resentencing hearing, the State "recounted" the defendant's criminal history beyond his two predicate convictions. It is unclear if evidence of the other offenses was formally introduced by the State. It does appear, however, that the State offered the information about the defendant's prior history gratuitously, and the trial court did not solicit it. The trial court thereafter imposed a sentence in *Arceneaux* that was 15 years less than the previous sentence. Significantly, when the prior panel in *Arceneaux* found that defendant's sentence to be unconstitutionally excessive, there was no discussion or analysis whatsoever in that opinion regarding the trial court's reasons for imposing the sentence. Accordingly, I am unclear how the panel concludes with certainty that information about the defendant's criminal convictions outside of the multiple bill was not before the trial court at the time of the original sentencing, or that the trial court did not take that history into account when the defendant was originally sentenced. Regardless, I would point out that the *Arceneaux* case itself, would fall outside the parameters of the majority's own rule. In that matter, it was not the trial court that provided additional pertinent information to support the sentence, it was the State.

Finally, I do not think that any amount of artificial distinctions by the majority change the facts of this case or the nature of the crimes that the defendant perpetrated upon the victim. I further do not understand the lengths the majority has gone to distinguish cases for similar crimes that are nearly on point and support the sentence imposed by the trial court. I hope that the majority opinion, in this case, will be strictly limited to its facts by future panels of this Court and that the discretion of all members of this bench, including the right of disagreeing with our

fellow judges, will continue to be freely exercised.

For these reasons, I respectfully dissent.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 30, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-KA-32

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
GAIL D. SCHLOSSER (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          GWENDOLYN K. BROWN (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
ANGAD GHAI (APPELLEE)
MARKO MARJANOVIC (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053